IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAMES CLARK
Petitioner

VS ) C.A. NO. 03-609

UNITED STATES OF AMERICA
Respondent

NOTICE OF APPEAL AND CONTEMPORANEOUSLY
MEMORANDUM IN SUPPORT OF
REQUEST FOR A CERTIFICATE OF APPEALABILITY

STATEMENT OF THE CASE

Petitioner James Clark pled guilty to a four count indictment wherein each count charged a violation of 21 U.S.C. § 841(a)(1)(b)(1)(B). Thereafter Clark submitted an appeal which was affirmed by the Court of Appeals. Clark then filed a motion to vacate, set aside or correct sentence under § 2255. On November 13, 2005, the Court denied this motion under § 2255. Hence Clark hereby submits a notice of appeal and contemporaneously a memorandum in support of his request for a certificate of appealabilty (COA).

STATEMENT OF THE FACTS

By statute "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from... the final order in a proceeding under section 22555. 28 U.S.C. § 2253(c)(1). See **Patrick v United States,** 298 F.Supp.2d 206,209 (D. Mass. 2004), also see First Circuit Local Rule 22.1.

Where a district court has rejected the constitutional

claims on the merits the showing required to satisfy § 2253(c), is straight forward: The petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong. In Clark's case there are issues that reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong.

I. INEFFECTIVE ASSISTANCE OF COUNSEL

As an initaial matter the District Court's contention that "[T]he first two claims rest on the erroneous assertion that crack cocaine is not cocaine base. That assertion was rejected both by this Court and the Court of Appeals".... Memorandum and Order (Memo.) at 3.

This contention loses sight of thrust of Clark's claim and is only half right because while all "crack" cocaine is cocaine base not all cocaine base is "crack" cocaine. Although under First Circuit precedent Cocaine Base is Crack Cocaine under statutory law this does not apply to sentencing under the Sentencing Guidelines (U.S.S.G.) 100:1 ratio which applies to crack cocaine but not all cocaine base.

The origins of the sentencing scheme for cocaine offenses begin with the Anti-Drug Abuse Act of 1986 (the 1986 Act), now codified at § 841(b). The central pillars of the 1986 Act are its schedule of mandatory minimum sentences for weigh-based possession with intent to distribute, and the upward departure for recidivist offenders. Mandatory minimums under the statute begin at 5 and 10 years, respectively, depending on drug

quantity, double for a second offense and in certain cases mandate life imprisonment for a third. See 21 U.S.C. 841(b)(1)(A)-(B). The quantity-based penalty scheme under the statute employs a 100:1 ratio for cocaine base to powder cocaine, which means that the amount of powder cocaine necessary to trigger the statutory mandatory minimum is 100 times the amount of cocaine base necessary to trigger the same minimum sentence. Hence, it takes 500 grams or more of powder cocaine to trigger a 5-year mandatory minimum penalty whereas only 5 grams of cocaine base triggers the 5-year mandatory minimum; it takes 5,000 grams (5 kilograms) of powder cocaine to trigger a 10-year mandatory minimum penalty under the statute, whereas 50 grams or more of cocaine base will trigger this same penalty. Significantly, the term "cocaine base" is not defined anywhere in the statute.

While the U.S. Sentencing Commission (Commission) was formed pursuant to the sentencing reform Act of 1984, by 1986 it had not yet issued the guidelines. In response to the passage of the 1986 Act the commission incorporated the statutory 100:1 crack to powder ration in setting the Sentencing Guideline penalty ranges. Thus like the statute the Sentencing Guidelines at first did not define the term cocaine base. However this changed in 1993 when Congress passed an amendment, submitted by the Commission, U.S.S.G. App. C amdt. 487 (Nov. 1993), to the Sentencing Guidelines. This amendment defined "cocaine base as crack which is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, usually appearing in a lumpy, rocklike form".

Therefore after 1993, in order to sentence a defendant under the guideline provision for cocaine base, there must be a finding that the substance was crack cocaine. Under the guidelines, forms of cocaine base other than crack are treated as ordinary cocaine, and are not subject to the enhanced penalties associated with crack. As of now Congress has not seen fit to similarly amend the statute. See **United States v Richardson,** 225 F3d 46,49 (1st Cir. 2000) in accord **United States v Perry,** 389 F2d 278,288-90 (D.R.I. 2005).

Although inartfully plead in his § 2555, the crux of Clark's claim is that he was subjected to ineffective assistance of counsel when he was misinformed by his counsel that a forensic chemist could not distinguish between the cocaine base he possessed and crack cocaine. Misinformation that the Court also put forth thereby reinforcing the misinformation told to him by his counsel.

During the plea hearing Clark disputed that the substance in question was crack cocaine.

> The Court: Is there some question in your mind about that?
>
> Clark: There is a lot of things that I have a lot of questions about, your Honor.
>
> The Coaurt: Like what?
>
> Clark: Like in the plea agreement, first of all, it states that the substance is cocaine crack and on the lab report it states that it's cocaine base and the guidelines is more lenient for cocaine base as opposed

to cocaine crack.

The Court: Do you understand that crack is a form of cocaine base. That crack is cocaine base that is in a particular rock-like form?... [D]o you dispute whether that was crack?

Clark: I do dispute that.

The Court: That's a very important point. I am not going to accept a plea of guilty to a charge of possessing crack with intent to distribute if you dispute whether it was crack... [A]ll I am trying to explain to you is that the lab analysis, that lab test does a chemical analysis of the substance and crack is a form of cocaine base. So all the lab report would ever say is this is cocaine base. The Government would then have to prove that it is that form of cocaine base that is known as crack; in other words, it come in a physical form that on the street is referred to as crack. So the lab report would not ordinarily say this is crack cocaine.

Mr. Voccola: Your Honor, as a point of information for the Court, myself on several occasions, as well as Mr. Connors on at least three, addressed this issue with Mr. Clark effectuating the plea agreement.

It is my opinion that in order for the Government to meet its burden to show this substance could be considered crack, all that would be needed is the testimony of the agents in question to attest that they

have seen the substance and would consider it to be crack.

We do not have any agents at our disposal, that I am aware of, or that we are able to secure as witnesses who could dispute that. Nor were we able to secure any witnesses who would be able to look at the substance and indicate that it could not be considered crack.

This does present a perplexing problem for Mr. Clark. I have addressed as best as I thought I could. I thought I did it clearly and with diligence but apparently Mr. Clark feels that he can -- could at trial be able to prevent the Government from meeting its burden of showing that the substance of question would be considered that of crack. commonly referred to as crack, I should say. I also indicated that no scientist, whether we retained or that of the Government, would be able to testify that cocaine base is crack; that every scientist that I know of who would come in to testify would indicate that the substance is base and and it would be beyond the scientist but the expert witnesses in the field, meaning the agents themselves, who would make the distinction between base and crack. See generally Tr. 7:11-10:14, 1/14/02.

Thereafter the Court allowed Clark to confer with his counsel. During this consultation Clark raised the issue of hiring a chemist to analyze the cocaine base to show that it was

not crack cocaine. Instead of requesting an adjournment to investigate such as make a few phone calls to see if a chemist could actually make such a distinction between the two substances counsel informed Clark once again that a chemist could not and that the only way a distinction could be made would be to put the agents on the stand and and they would testify that the substance was crack cocaine.

This information supplied by counsel and reinforced by the Court was in error. As chemists have been able to testify whether or not a substance was crack cocaine or another form of cocaine base. In **United States v Booker,** 70 F3d 488,490-91 (7th Cir. 1995) the Court put forth a concise definition as to what is "crack" cocaine. It stated that cocaine base and cocaine hydrochloride (powder cocaine) have the same chemical formula. And that powder cocaine can be converted into cocaine base by a process that "frees" the base from the hydrochloride. id. at 491. Cocaine "freebase" popular in the 1970s, is produced by mixing cocaine hydrochloride with ammonia and ether or another organic solvent. However "crack" is a street name for another form of freebase cocaine, produced by mixing cocaine hydrochloride with sodium bicarbonate (baking soda) and water, boiling the mixure until only a solid substance is left. Although "crack" rivals freebase cocaine in terms of potency it is clear that they are two different substances. While looking like freebase and having the same potency "crack" falls under the 100:1 ratio under the guidelines while freebase does not. See **United States v Brigman,** 350 F3d 310,315 (3rd Cir. 2003). Further because freebase would

have telltale markers of the solvent used in its creation a chemist could distinguish freebase from "crack". In **Richardson,** 225 F3d at 50, a DEA chemist testified during sentencing that she performed multiple tests on all the samples and positively identified them as cocaine base and gave her opinion that it was crack cocaine based on the appearance of the samples and the presence in some of them of sodium bicarbonate); in **United States v Edwards,** 397 F3d 570,573 (7th Cir. 2005)(the chemist stated his laboratory was able to distinguish cocaine base from "crack' as crack cocaine possess notable telltale signs and in **United States v Davis,** 864 F.Supp. 1303,1305 (N.D.Ga. 1994)(a DEA chemist testified that at this time DEA chemist defined "crack" as a lumpy substance containing cocaine and bicabonate soda). However it should be noted that the Government need not prove that the substance at issue contained sodium bicarbonate in order to find the substance crack. See **United States v Fulton,** 960 F.Supp. 479,494 (D. Mass. 1997) and **United States v Tolson,** 935 F.Supp. 17,22-23 (D.D.C. 1996).

During the plea hearing Clark attempted to inform the Court that his Cocaine Base was processed using the ammonia method, therefore a different substance. Clark was correct, because his crack was prepared using ammonia it is a different form of crack which does not fall under the 100:1 ratio under the guidelines.

> Clark: Your Honor, I had read a statement when I was incarcerated and it stated that cocaine -- crack is a form of cocaine which is cooked with ammonia. That's where it makes it different from the cocaine base.

It's the formula for it such as a formula for water would be H2O. So it is like it's two different substances. Tr. 7:25-8:6, 1/14/02.

Further during the sentencing hearing Clark once again informed the Court that the substance in question was not "cracK"

Clark: Your Honor I do understand what I'm up against. I'm not saying that I'm Innocent. I know that I already pleaded guilty, but where they're charging me with a form of cocaine base and they are saying that it is crack, Your Honor, which is not crack. That's why the penalty for crack is much stiffer. That's why I'm looking at 15 or 18 years. What I'm trying to explain to Your Honor is what I possessed was cocaine base. It was not crack.

The Court: Well, when you plead guilty, you plead guilty to possessing crack, didn't you?

Clark: Excuse me, Your Honor, when I plead guilty, I had plead guilty to possessing cocaine base in the form of crack. In other words Your Honor, this is my point. If I had a .22 caliber hand gun and an officer seen me, he wouldn't know if was a .22 or .25 until they actually had to how do you say, forensic or they brought it to a professional, somebody who would know. In other words, the officer is saying that in the case of what I had, it looked like crack. There is no -- the lab analysis that came back says cocaine base. It does not say crack. It says alleged drug cocaine

crack. It says what the drug is, it says active drug ingredient, cocaine base. The State, this is the lab result itself. I did not have crack. Tr. 7:17-8:20, 6/25/20.

See **United States v Brisbane,** 367 F3d 910,913 (D.C. Cir. 2004) Although smokability was extremely important in distinguishing crack from powder cocaine. Smokable cocaine existed long before the mid 1980s. Yet before the advent of crack, Congress did not punish it more severely than powder cocaine, see also **United States v Johnson,** 976 F.Supp. 284,290 n8 (D.Del. 1997)(freebase cocaine was mentioned by the sentencing commission as another form of cocaine base that was not crack).

Therefore because Clark attempted to explain to the Court that his crack cocaine was prepared with the use of ammonia and not as usually prepared with sodium bicarbonate as the crack that carried the 100:1 ratio he is actually innocent of the sentence he received.

Here Clark was rebuffed by the Court every time he attempted to explain that he did not possess the form of crack cocaine that carried the 100:1 ratio. Further when he tried to explain the type of crack cocaine he possessed to his counsel, counsel informed him that no laboratory could distinguish the difference and that it did not matter anyway because it was what the agents testified the substance was is what mattered therefore counsel was ineffective.

Clark suffered prejudice because had he known that a chemist could tell the difference in the freebase crack cocaine he

possessed from the crack cocaine which falls under the 100:1 ratio he would not have plead guilty until the substance in question was analyzed by an expert chemist of his choosing.

As mentioned the crux of Clark's claim is that the crack cocaine he possessed was not the type subject to 100:1 ratio hence he only puts this issue before the Court while not waiving any other issue set forth in his motion under § 2255.

## CONCLUSION

Because reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong a COA should issue.

Date__________

James Clark
Reg. No. 05072-070
FCI Otisville
P.O. Box 1000
Otisville, NY 10963